Charles H. Smyser and Smyser and Associates,
Inc., Plaintiffs-Appellants,†

v.

Western Star Trucks Corp., Western Star Trucks
Sales, Inc. and Racine Truck & Equipment Corp.,
Defendants-Respondents.

Court of Appeals

*No. 00–2482. Submitted on briefs June 6, 2001.—Decided July
18, 2001.*

2001 WI App 180

(Also reported in 634 N.W.2d 134.)

† Petition to review denied 10-23-01.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Gary W. Thompson* of *Thompson Law Offices, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Winthrop B. Reed, III* of *Lewis, Rice & Fingersh, L.C.* of St. Louis, Missouri, and *Michael J. Jassak* of *Habush, Habush, Davis & Rottier, S.C.* of Racine.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, J. The issues on appeal are whether a consumer may invoke the Lemon Law or revoke acceptance of a motor vehicle under the Uniform Commercial Code (UCC) after the consumer has surrendered possession and title of the vehicle to the dealer and the vehicle has been sold to a third party. Like the trial court, we hold that the remedies of the Lemon Law and the UCC are not available in such a situation. Consequently, we affirm the summary judgment dis-

missing the claims of Charles H. Smyser and Smyser and Associates, Inc. (Smyser) against Western Star Trucks Corp., Western Star Trucks Sales, Inc. (Western Star) and Racine Truck & Equipment, Corp. (Racine Truck).

### FACTS

¶ 2. The relevant facts are not in dispute. On January 31, 1997, Smyser purchased a new 1997 Western Star truck from Racine Truck, a Western Star dealer. The purchase price was $86,496.39. Smyser financed $82,962.42 of the purchase price through Orix Credit Alliance, Inc. (Orix). As the lienholder, Orix retained possession of the title to the vehicle. The vehicle was covered by a warranty provided by Western Star.

¶ 3. Almost immediately, Smyser experienced vibration problems with the vehicle. He brought it in for attempted repairs at various Western Star dealers, including Racine Truck, but the problem persisted. Despite these attempts to repair the vehicle, Western Star does not dispute that the nonconformity continued and the vehicle is a "lemon" under the Lemon Law. *See* Wis. Stat. § 218.0171(1)(h), (2)(a) (1999–2000).[1]

¶ 4. On June 19, 1998, Smyser informed Glenn Long, Western Star's manufacturing representative, that he was not going to make future loan payments on the vehicle. Smyser similarly advised Orix, his lender.

---

[1] At the time this case was litigated in the trial court, the Lemon Law was numbered Wis. Stat. § 218.015 (1997–98). The statute was later renumbered to the current Wis. Stat. § 218.0171. We use the current numbering in this opinion. All references to the Wisconsin Statutes are therefore to the 1999–2000 version.

Orix responded by advising Smyser to surrender the vehicle to Racine Truck. Smyser then spoke with Tim Miles, Racine Truck's manager, who agreed that Racine Truck would take back the vehicle. Accordingly, on June 22, 1998, Smyser drove the truck to Racine Truck, parked it, gave the keys to a Racine Truck salesman, and signed a power of attorney authorizing Racine Truck to transfer his interest in the vehicle.[2] Racine Truck then obtained clear title by paying Orix $65,000, the amount of Smyser's loan balance. A few days later, Racine Truck sold the vehicle to a third party.

¶ 5. Some ten months later, Smyser wrote to Western Star seeking monetary relief under the Lemon Law in the amount of $41,019.26.[3] Western Star rejected Smyser's claim. Smyser responded with this lawsuit against Western Star and Racine Truck alleging various causes of action. Relevant to this appeal, Smyser's complaint alleged a Lemon Law claim against Western Star and revocation of his acceptance of the vehicle under the UCC against Western Star and Racine Truck.

¶ 6. Western Star and Racine Truck moved for summary judgment. Following a hearing and after reviewing the parties' written briefs, the trial court issued a written decision granting the motion for summary judgment. The trial court determined that Western Star had made a reasonable attempt to repair the vehicle but the nonconformity had not been repaired

---

[2] For purposes of this opinion, we treat Smyser's assignment of his interest in the vehicle as the equivalent of delivering the title as contemplated by WIS. STAT. § 218.0171(2)(c).

[3] These calculations included the net trade-in value of the vehicle ($13,037.58), Smyser's finance charges ($27,664), tires and repairs ($1642.48), less an allowance for use of the vehicle before the defect was reported ($1324.80).

pursuant to WIS. STAT. § 218.0171(2)(a) and (b). However, because Smyser had previously surrendered the vehicle and the title to Racine Truck and the vehicle had been sold to a third party, the court concluded that Smyser could not obtain relief under the Lemon Law or the UCC. Smyser appeals.

## *STANDARD OF REVIEW*

¶ 7. This court reviews decisions on summary judgment de novo. When reviewing a summary judgment, we follow the same methodology as the trial court. That methodology has been described many times, and we need not repeat it here in detail. *Vultaggio v. Gen. Motors Corp.*, 145 Wis. 2d 874, 881, 429 N.W.2d 93 (Ct. App. 1988). Suffice it to say that we review decisions on summary judgment de novo. *Id.* In addition, Smyser's arguments require that we apply the relevant provisions of the Lemon Law and the UCC to the facts of this case. That exercise also presents a question of law that we review de novo. *See Tomczak v. Bailey*, 218 Wis. 2d 245, 252, 578 N.W.2d 166 (1998). Despite our de novo standard of review, we nonetheless value the trial court's decision on the issues. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993).

## *DISCUSSION*

### *1. Lemon Law*

¶ 8. Smyser asserted claims under WIS. STAT. § 218.0171(2)(a) and (b) of the Lemon Law. Section 218.0171(2)(a) obligates a manufacturer to repair a nonconformity covered by a warranty under certain

conditions.[4] Section 218.0171(2)(b) provides that the consumer may obtain a replacement vehicle or a refund and related costs where, after the manufacturer's reasonable attempt to repair, the nonconformity is not repaired.[5] To receive a replacement vehicle or a refund, the consumer must offer to transfer the title of the vehicle to the manufacturer and, upon the manufacturer providing the replacement vehicle or the refund, the consumer must deliver the vehicle and the title to the manufacturer. Section 218.0171(2)(c).[6]

---

[4] WISCONSIN⋅STAT. § 218.0171(2)(a) provides:

> If a new motor vehicle does not conform to an applicable express warranty and the consumer reports the nonconformity to the manufacturer, the motor vehicle lessor or any of the manufacturer's authorized motor vehicle dealers and makes the motor vehicle available for repair before the expiration of the warranty or one year after first delivery of the motor vehicle to a consumer, whichever is sooner, the nonconformity shall be repaired.

[5] WISCONSIN STAT. § 218.0171(2)(b) provides in relevant part:

> (b) 1. If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall carry out the requirement under subd. 2. or 3., whichever is appropriate.
>
> 2. At the direction of a consumer . . . do one of the following:
>
> a. Accept return of the motor vehicle and replace the motor vehicle with a comparable new motor vehicle and refund any collateral costs.
>
> b. Accept return of the motor vehicle and refund to the consumer . . . the full purchase price plus any sales tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use.

[6] WISCONSIN STAT. § 218.0171(2)(c) provides in relevant part:

¶ 9. In *Vultaggio*, we explained the differences between these two subsections:

> G.M. argues that allowing consumers to bring a claim under subsec. (2)(a) of the statute would render subsec. (2)(b) superfluous. We disagree. Subsection (2)(b) contains a series of conditions which, if satisfied, entitle the consumer to the remedies of refund or replacement. These remedies are unavailable to violations of subsec. (2)(a). In this manner, subsecs. (2)(a) and (2)(b) are best viewed as addressed to different obligations of the manufacturer: a duty to repair a defective vehicle, in subsec. (a), and in subsec. (b), a duty to replace or refund the cost of a vehicle which is subject to an inordinate amount of repair. With their different requirements and remedies, subsec. (2)(a) does not render subsec. (2)(b) superfluous.
>
> *Subsection (2)(a) protects the consumer from those instances in which the consumer is unable to establish the "reasonable attempt to repair" necessary under sec. 218.015(2)(b), Stats., but can show that the dealer has not, cannot, or will not repair a nonconformity brought to its attention during the warranty period.*

*Vultaggio*, 145 Wis. 2d at 891 (emphasis added).

> To receive a comparable new motor vehicle or a refund due under par. (b)1. or 2., a consumer . . . shall offer to the manufacturer of the motor vehicle having the nonconformity to transfer title of that motor vehicle to that manufacturer. No later than 30 days after that offer, the manufacturer shall provide the consumer with the comparable new motor vehicle or refund. When the manufacturer provides the new motor vehicle or refund, the consumer shall return the motor vehicle having the nonconformity to the manufacturer and provide the manufacturer with the certificate of title and all endorsements necessary to transfer title to the manufacturer.

¶ 10. We further addressed *Vultaggio* in *Dussault v. Chrysler Corp.*, 229 Wis. 2d 296, 600 N.W.2d 6 (Ct. App. 1999). There, as here, the consumer alleged Lemon Law claims under both Wis. Stat. § 218.0171(2)(a) and (2)(b). We rejected the § 218.0171(2)(a) claim because the manufacturer had made a "reasonable attempt to repair" under § 218.0171(2)(b). *Dussault*, 229 Wis. 2d at 308. We said:

> Here, Dussault alleged in her complaint that Chrysler had been offered a "reasonable attempt to repair" the vehicle because it had not been fixed after thirty days or four attempts. *See* § 218.015(1)(h), Stats. Chrysler conceded this fact. Therefore, there is no dispute that Dussault established a "reasonable attempt to repair." As a consequence, because a para. (2)(a) remedy is only intended for a "consumer [who] is unable to establish the 'reasonable attempt to repair,'" *Vultaggio*, 145 Wis. 2d at 891, 429 N.W.2d at 99, Dussault has no claim under para. (2)(a).

*Dussault*, 229 Wis. 2d at 308.

¶ 11. The undisputed summary judgment evidence in this case supports the trial court's determination that although Western Star could not remedy the nonconformity, it did make a reasonable attempt to repair the vehicle pursuant to Wis. Stat. § 218.0171(2)(b). In fact, Smyser does not contend otherwise. As such, *Vultaggio* and *Dussault* bar Smyser's claim under subsec. (2)(a).

¶ 12. Next, we address Smyser's claim for a refund and related expenses under Wis. Stat. § 218.0171(2)(b). As our prior discussion reveals, in order to receive a refund or a replacement vehicle,

the consumer must first offer to transfer title to the vehicle back to the manufacturer. Then, upon the manufacturer providing the replacement vehicle or the refund, the consumer must deliver the vehicle and the title to the manufacturer. Section 218.0171(2)(c). The undisputed evidence establishes that Smyser could not have satisfied either of these requirements at the time he made his Lemon Law claim since he had previously surrendered the vehicle and the title to Racine Truck. Smyser did not take these actions under the auspices of the Lemon Law. To the contrary, he did not invoke the Lemon Law until some ten months later, long after Racine Truck had sold the vehicle to a third party.

■

¶ 13.  Smyser argues that it makes no difference that he surrendered the vehicle and the title before made his refund demand. In support, he notes that the Lemon Law is a remedial statute that should be liberally construed to protect consumers from warranty abuses by motor vehicle manufacturers. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 978–82, 542 N.W.2d 148 (1996). We recognize that the Lemon Law is the result of past warranty abuses against consumers by motor vehicle manufacturers. But, despite its remedial purpose in favor of consumers, the Lemon Law nonetheless places certain duties on consumers who seek its remedies. Among these duties is the obligation to deliver the vehicle and the title to the manufacturer when the consumer seeks a refund or a replacement vehicle. Wis. Stat. § 218.0171(2)(c).

¶ 14.  These consumer obligations are stated in clear and unambiguous terms, particularly as to the timing of the delivery of the vehicle and the title. The statute says, "*When* the manufacturer provides the new motor vehicle or refund, the consumer shall return the

motor vehicle . . . and provide . . . the certificate of title
. . . ." *Id.* (emphasis added). This language signals that
the legislature viewed the performance of these mutual
obligations as a quid pro quo which would occur con-
currently, or nearly so. But that scenario could not
occur in this case because, long before he made any
claim under the Lemon Law, Smyser had surrendered
his possession and interest in the vehicle to Racine
Truck and the vehicle was then sold to a third party.

¶ 15. Smyser would have us rewrite these clear
and unambiguous terms of the Lemon Law simply
because the law is remedial in favor of consumers. We
cannot do that. We agree with the statement of the
Seventh Circuit Court of Appeals when construing
Wisconsin's Lemon Law in *Bushendorf v. Freightliner
Corp.*, 13 F.3d 1024 (7th Cir. 1993):

> There is no presumption that when a legislature legis-
> lates against some abuse, such as the sale of "lemons"
> without proper disclosure, it means to resolve all diffi-
> cult questions in favor of liability, thus disregarding
> every value other than that of providing remedies for
> injuries and every interest other than that of prospec-
> tive victims. Remedial statutes like other statutes are
> typically compromises, and a court would upset the
> compromise if it nudged such a statute closer to the
> victim side of the line than the words and history and
> other indications of the statute's meaning pointed.

*Id.* at 1026 (citations omitted).

¶ 16. In summary, Smyser was no longer a con-
sumer under the Lemon Law when he registered his
Lemon Law claim.[7] We uphold the trial court's rejection
of Smyser's claim under Wis. Stat. § 218.0171(2)(b).

---

[7] Our holding renders moot Smyser's further argument
that, at a minimum, an issue of fact exists as to whether Racine
Truck was acting as Western Star's agent when it accepted the

## 2. Uniform Commercial Code

¶ 17. Smyser also looks to the UCC for relief. He contends that his delivery of the vehicle and the title to Racine Truck constituted a revocation of his acceptance of the vehicle pursuant to Wis. Stat. § 402.608.[8] We reject this argument for essentially the same reasons we have rejected Smyser's Lemon Law claim.

¶ 18. Wisconsin Stat. § 402.608(1) recognizes a buyer's right to revoke acceptance of goods "whose nonconformity substantially impairs its value." Section 402.608(2) provides that revocation of acceptance must occur "within a reasonable time after the buyer discovers or should have discovered [the nonconformity] . . . . It is not effective until the buyer notifies the seller of it."

return of Smyser's vehicle. If Smyser could not comply with the requirements of the Lemon Law when he made his claim, it makes no difference that Racine Truck was acting as Western Star's agent.

Smyser further argues that in *Hartlaub v. Coachmen Industries, Inc.*, 143 Wis. 2d 791, 422 N.W.2d 869 (Ct. App. 1988), we allowed Lemon Law recovery where the consumer had previously sold the vehicle. True, we observed in the recital of the facts that the consumer had sold the vehicle. *Id.* at 795. However, that was the extent of our discussion on that point. The manufacturer never raised the prior sale as a defense to the Lemon Law claim. Instead, the issues on appeal were whether the Lemon Law applied where the consumer accepted the vehicle after repair of the nonconformities and whether certain defects constituted nonconformities. *Id.* at 797. In short, *Hartlaub* did not address the issue raised here.

[8] While alleging revocation of his acceptance pursuant to Wis. Stat. § 402.608, Smyser's complaint does not identify the remedy he sought under the UCC. We assume his claim invoked Wis. Stat. § 402.711(1) which permits the buyer to seek certain damages following cancellation of the transaction based on justifiable revocation of acceptance.

Section 402.608(3) provides that such a buyer "has the same rights and duties with regard to the goods involved as if the buyer had rejected them." WISCONSIN STAT. § 402.602(2)(b) obligates a buyer who has rejected goods to "hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them." Section 402.602(2)(a) of this statute provides that "[a]fter rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller."

██

¶ 19.   We have previously noted that Smyser made no legal claims against Western Star until some ten months after he had delivered the vehicle and the title to Racine Truck.[9] As a result, the vehicle was sold to a third party. Given these facts, it is apparent that Smyser did not hold the vehicle for Western Star as a rejected commodity under the UCC. Instead, by using the vehicle for nearly a year and a half and by then transferring the title and possession, Smyser was signaling his continuing acceptance, not revocation of that acceptance, of the vehicle. Smyser's attempt to revoke his acceptance nearly two years after delivery of the vehicle and after he engaged in conduct confirming his ownership of the vehicle stands the revocation of acceptance provisions of WIS. STAT. § 402.608 on its head.

---

[9] Actually, the letters of April 15, 1999, and May 3, 1999, from Smyser's attorney to Western Star asserted only a claim under the Lemon Law. The letters made no mention of a claim under the UCC. The first mention of the UCC was in Smyser's complaint in this action. Nonetheless, we will construe the letters as asserting a claim under the UCC.

¶ 20. As with Smyser's Lemon Law claim, the revocation of acceptance and related provisions of the UCC contemplate congruent actions by the buyer and the seller. That did not occur here.

## CONCLUSION

¶ 21. We uphold the trial court's summary judgment ruling dismissing Smyser's claims under the Lemon Law and the UCC.

*By the Court.*—Order affirmed.