## Adele R. GARCIA, Plaintiff-Appellant-Cross-Respondent,†

v.

## MAZDA MOTOR OF AMERICA, INC., a foreign corporation, and Hall Imports, Inc., a Wisconsin corporation, Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 02–2260. Submitted on briefs April 10, 2003.—
Decided September 25, 2003.*

### 2003 WI App 208

(Also reported in 671 N.W.2d 317.)

---

† Petition to review granted 12-16-03.

---

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *William S. Pocan, Vincent P. Megna,* and *Susan M. Grzeskowiak, Jastroch & LaBarge, S.C.* of Waukesha.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of *Jeffrey S. Fertl, Hinshaw & Culbertson* of Milwaukee.

Before Dykman, Vergeront and Lundsten, J.J.

¶ 1. VERGERONT, J. This appeal concerns Wisconsin's Lemon Law, WIS. STAT. § 218.0171

(2001–02).[1] The trial court granted summary judgment in favor of Mazda Motor of America, Inc. and Hall Imports, Inc. on Adele Garcia's Lemon Law claim, concluding that the thirty days for Mazda to provide Garcia with a comparable new vehicle had not begun to run because she did not offer to transfer title of her motor vehicle to Mazda as required by § 218.0171(2)(c). We agree with the trial court. We conclude the plain meaning of this subsection is that the thirty days within which the manufacturer is obligated to provide a comparable new vehicle or a refund of the purchase price at the direction of the consumer does not begin to run until the consumer offers to transfer title of the vehicle to the manufacturer. Based on the undisputed facts, we conclude Garcia did not offer to transfer title of her vehicle to Mazda. Accordingly, we affirm the summary judgment.[2]

## BACKGROUND

¶ 2. The relevant background facts are not disputed. In February 2001, Garcia purchased and took delivery of a 2001 Mazda Tribute from Hall Imports. Within a few weeks of delivery, she experienced problems with the transmission/gear shifter when trying to shift out of park. Garcia brought the vehicle to Hall Imports for repairs on April 4, 2001, and again on August 1 and August 8 because the problem with the

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Our disposition of the appeal makes it unnecessary for us to decide the issue Mazda and Hall Imports raise on their cross-appeal: whether the trial court erred in concluding that, as a matter of law, Garcia and Mazda had not reached an enforceable settlement agreement before Garcia filed this action.

gear shift continued. During Garcia's trip to Billings, Montana, in early September 2001, she once again experienced shifting problems with the vehicle, and she left her vehicle at a Mazda dealership in Billings for repairs on September 5.

¶ 3. On September 20, while her vehicle was still being repaired in Billings, Garcia sent a letter by certified mail to Mazda's consumer compliance department. She explained the problems she had had with the vehicle, her attempts to repair it, and stated:

> It is my understanding that the Lemon Law in the State of Wisconsin is that after a reasonable number of unsuccessful repair attempts by Mazda or its authorized dealers, or that the vehicle has been out of service for a specific number of days, that I'm entitled to either a comparable replacement vehicle or a refund of the purchase price. At this time the automobile has been out of service for a period of 16 days and I would like to have a replacement.

The receipt card shows Mazda received this letter on September 24. Mazda's consumer compliance specialist responded by letter that she would review the matter and contact Garcia.

¶ 4. Meanwhile, on October 5 Garcia picked up her vehicle at Hall Imports. She continued to have trouble getting her vehicle out of park and brought the vehicle again to Hall Imports for repair on October 16. She was told then that it would need a new transmission.

¶ 5. Mazda responded on October 18 to Garcia's letters (she had written another on October 12) by offering her an extended warranty instead of a replacement. Garcia refused and reiterated that she wanted a replacement vehicle. On October 26, Mazda contacted Garcia and said Mazda would provide a replacement

vehicle. Garcia went to Hall Imports and placed an order for a new Mazda Tribute. The parties dispute whether they had an agreement at that time that Garcia would accept the replacement vehicle as a resolution of her complaint with Mazda or whether there were unresolved issues concerning the payment of sales taxes and other charges. However, that dispute is not relevant to this appeal. In either case, Garcia did not have a new vehicle by the time she filed this action on November 21, 2001. The complaint alleged that Mazda violated WIS. STAT. § 218.0171 because it had not provided a comparable new vehicle without imposing conditions not required by the statute.

¶ 6. The defendants moved for summary judgment on the ground that the thirty-day time period in WIS. STAT. § 218.0171(2)(c) for Mazda to respond to Garcia's request for a comparable new vehicle was never triggered because Garcia had not offered to transfer title to her vehicle to Mazda. This section provides:

> (c) To receive a comparable new motor vehicle or a refund due under par. (b)1. or 2., a consumer described under sub. (1)(b)1., 2. or 3. shall offer to the manufacturer of the motor vehicle having the nonconformity to transfer title of that motor vehicle to that manufacturer. No later than 30 days after that offer, the manufacturer shall provide the consumer with the comparable new motor vehicle or refund. When the manufacturer provides the new motor vehicle or refund, the consumer shall return the motor vehicle having the nonconformity to the manufacturer and provide the manufacturer with the certificate of title and all endorsements necessary to transfer title to the manufacturer.

The trial court agreed with the defendants and granted summary judgment dismissing the complaint.

## DISCUSSION

¶ 7. Garcia contends on appeal that the trial court erred in construing Wis. Stat. § 218.0171(2)(c) because the subsection does not require that a consumer explicitly offer to transfer title. Rather, she asserts, such an offer is implicit in a request for a replacement vehicle because "replacement" implies that the consumer will give back the nonconforming vehicle in exchange for the new vehicle. Therefore, according to Garcia, the thirty days for Mazda to provide Garcia with a comparable new vehicle began to run on September 24, 2001, and expired on October 24, 2001.

¶ 8. We review summary judgments de novo, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Generally, summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In this case, which party is entitled to judgment depends upon the proper construction of Wis. Stat. § 218.0171(2)(c). This presents a question of law, which we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). The purpose of statutory interpretation is to discern the legislature's intent. *Id.* at 406. We first consider the language of the statute. *Id.* If that clearly and unambiguously sets forth the legislature's intent, we do not look outside the statutory language to ascertain that intent; rather, we apply the plain language to the facts at hand. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably

well-informed persons. *Id.* However, statutory language is not ambiguous merely because the parties disagree on its meaning. *Id.*

■

¶ 9. WISCONSIN STAT. § 218.0171, the Lemon Law, is "a remedial statute designed to rectify the problem a new car buyer has when that new vehicle is a 'lemon.' " *Berends v. Mack Truck, Inc.*, 2002 WI App 69, ¶ 8, 252 Wis. 2d 371, 643 N.W.2d 158. If a new motor vehicle does not conform to an express warranty and the consumer reports the nonconformity and makes the vehicle available for repair before the expiration of the warranty or one year after delivery of the vehicle, "the nonconformity shall be repaired." Section 218.0171(2)(a). If the nonconformity is not repaired after a reasonable attempt to repair, the consumer's remedies under § 218.0171(2)(b) are as follows:

> (b) 1. If after a reasonable attempt to repair the nonconformity is not repaired, the manufacturer shall carry out the requirement under subd. 2. or 3., whichever is appropriate.

> 2. At the direction of a consumer described under sub. (1)(b)1., 2. or 3., do one of the following:

> a. Accept return of the motor vehicle and replace the motor vehicle with a comparable new motor vehicle and refund any collateral costs.

> b. Accept return of the motor vehicle and refund to the consumer and to any holder of a perfected security interest in the consumer's motor vehicle, as their interest may appear, the full purchase price plus any sales

629

tax, finance charge, amount paid by the consumer at the point of sale and collateral costs, less a reasonable allowance for use . . . .[3]

 3. [Applying to leased vehicles.]

(Footnote added.)

¶ 10. Turning to the language of WIS. STAT. § 218.0171(2)(c), we see, generally, that this paragraph establishes the process by which the consumer obtains the chosen remedy and the obligations of both the consumer and the manufacturer in that process. The

---

[3] We held in *Berends v. Mack Truck, Inc.*, 2002 WI App 69, ¶¶ 11–13, 252 Wis. 2d 371, 643 N.W.2d 158, that the plain language of WIS. STAT. § 218.0171(2)(b) required the consumer to choose one of the two remedies and communicate this choice to the manufacturers. Because the consumer there did not do so, but instead listed these as alternatives in a demand letter to the manufacturer, we concluded the notice was defective. *Id.* We expressly left open the issue of "whether a consumer must explicitly state an intention to transfer title or whether such an offer can be inferred from the consumer's offer to return the vehicle." *Id.*, ¶ 1 n.2. We added: "However, we note for the reader's benefit that the most prudent approach would be to explicitly offer to transfer title of the motor vehicle to the manufacturer." *Id.* We observe that our statement of the issue in *Berends* differs somewhat from the argument Garcia makes because the consumer in *Berends* demanded that the manufacturer "accept the return of his vehicle" as well as providing a new vehicle. *Id.*, ¶ 2.

In *Berends*, the applicable statute was WIS. STAT. § 218.015(2)(b) (1997–98). The Lemon Law was renumbered WIS. STAT. § 218.0171, effective April 19, 2000, but was not substantively amended in the course of renumbering. Therefore, our interpretation in *Berends* is equally applicable to WIS. STAT. § 218.0171, and we refer to the current numbering system in this opinion.

first sentence says in mandatory language that the consumer "shall offer to the manufacturer . . . to transfer title of that [nonconforming] motor vehicle." Section 218.0171(2)(c). The second sentence says, again in mandatory language, that "[n]o later than 30 days after that offer, the manufacturer shall provide the consumer with the comparable new motor vehicle or refund." *Id.* "That offer," which starts the thirty days running, can only refer to the "offer to the manufacturer . . . to transfer title of that [nonconforming] motor vehicle" in the preceding sentence. The third sentence, again in mandatory language, imposes certain obligations on the consumer when the manufacturer provides the chosen remedy: the consumer shall return the nonconforming motor vehicle to the manufacturer and "the certificate of title and all endorsements necessary to transfer title to the manufacturer." *Id.*

¶ 11. We see no ambiguity in the first two sentences of WIS. STAT. § 218.0171(2)(c): the consumer must offer to the manufacturer to transfer title to the nonconforming vehicle and that offer triggers the start of the thirty-day period within which the manufacturer must provide the consumer with the chosen remedy. Garcia's reading—that the request for a replacement vehicle is implicitly an offer to transfer title that triggers the thirty days—is not a reasonable reading of the statutory language. Presumably, a request for a refund of the purchase price could also be construed as an implicit offer to transfer title to the nonconforming vehicle. Thus, under Garcia's reading, the consumer's request for either remedy starts the thirty days running and a separate offer to transfer title is never necessary because it is implicit in the request for one or the other

631

remedy. However, if that is what the legislature intended, it would not have used the words "thirty days from that offer."

¶ 12. Garcia points out that the last sentence in WIS. STAT. § 218.0171(2)(c) requires that the consumer actually deliver the certificate of title and the necessary endorsement to transfer title before obtaining a comparable new vehicle or a refund. According to Garcia, it is therefore unnecessary for the consumer to offer to transfer title to accomplish the goal of making sure the manufacturer gets title to the nonconforming vehicle along with the nonconforming vehicle. However, it is for the legislature to decide what process will facilitate that goal, and the legislature has plainly decided that a consumer's offer to transfer title, in addition to a request for either a comparable new vehicle or a refund, should be required to trigger the manufacturer's obligation to provide the consumer's chosen remedy.

¶ 13. Garcia also argues that, in view of the remedial purpose of the Lemon Law, we should construe the language of WIS. STAT. § 218.0171(2)(c) in favor of consumers and not require an explicit offer to transfer title in addition to a request for a comparable new vehicle. The purpose of the Lemon Law as expressed by the supreme court is to "improve auto manufacturers' quality control . . . [and] reduce the inconvenience, the expense, the frustration, the fear and [the] emotional trauma that lemon owners endure." *Hughes v. Chrysler Motor Corp.,* 197 Wis. 2d 973, 982, 542 N.W.2d 148 (1996) (alterations in original) (citation omitted). This is without doubt a significant remedial purpose. However, the rule of statutory construction on which Garcia relies applies only when statutory language is ambiguous; it does not permit a court to rewrite unambiguous

terms of the Lemon Law. *See Smyser v. Western Star Trucks Corp.*, 2001 WI App 180, ¶ 15, 247 Wis. 2d 281, 634 N.W.2d 134.

¶ 14. Garcia also relies on *Alberte v. Anew Health Care Services, Inc.*, 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515, for the proposition that courts have "some scope for adopting a restricted rather than a literal or usual meaning of [a statute's] words where acceptance of that meaning . . . would thwart the obvious purpose of the statute." (Second alteration in original) (citations omitted). In *Alberte*, the court rejected a literal interpretation of certain words because the court concluded it produced unreasonable results in light of the entire statutory scheme at issue in that case. *Id.*, ¶¶ 10–12. We do not see how reading WIS. STAT. § 218.0171(2)(c) to require the consumer to offer to transfer title in order to trigger the thirty-day period thwarts the legislative purpose of the Lemon Law or is unreasonable in light of the entire statutory scheme. It is a requirement that is plainly set forth in the statute and it is a requirement that is easy for a consumer who has title to a nonconforming motor vehicle to comply with. The fact that a particular consumer did not comply with this requirement and therefore is not entitled to the remedy she seeks in a court action is unfortunate, but it does not mean that the requirement itself thwarts the purpose of the Lemon Law or is unreasonable in light of the entire statutory scheme. If the requirement of offering to transfer title is a technicality that causes more harm to unwary consumers than it does facilitate the actual transfer of title to the manufacturer, as Garcia contends, then the solution lies with the legislature.

¶ 15. In summary, we conclude that the thirty days within which Mazda was obligated to provide Garcia with a comparable new vehicle did not begin to run under WIS. STAT. § 218.0171(2)(c) until Garcia offered to transfer title to her vehicle to Mazda. We also conclude that her request for a replacement vehicle did not satisfy the requirement that she offer to transfer title to her vehicle to Mazda. Accordingly, Mazda did not violate the statute by failing to provide her with a comparable new vehicle.

*By the Court.*—Judgment affirmed.

¶ 16. LUNDSTEN, J. (*dissenting*). The majority concludes that Adele Garcia did not offer to transfer title to her vehicle to Mazda, within the meaning of Wisconsin's Lemon Law. I respectfully dissent because I believe Garcia gave Mazda clear notice that she was offering to transfer title under the Lemon Law.

¶ 17. As the majority explains, when certain criteria are met, Wisconsin's Lemon Law gives car owners a choice of two remedies and requires that the owners communicate their choice of remedy to the manufacturer. The applicable subsection provides in part:

> To receive a comparable new motor vehicle or a refund . . . a consumer . . . shall offer to the manufacturer of the motor vehicle having the nonconformity to transfer title of that motor vehicle to that manufacturer.

WIS. STAT. § 218.0171(2)(c). An offer under this subsection triggers a thirty-day time period for compliance by the manufacturer.

¶ 18. I agree with the majority that WIS. STAT. § 218.0171(2) unambiguously requires that a "lemon" owner communicate to the manufacturer the remedy

the owner desires and offer to transfer title to their vehicle in exchange for a refund or a replacement vehicle. Under the statutory scheme, a manufacturer must receive clear notice of such a demand and offer so that the commencement date of the thirty-day time period for compliance is likewise clear.

¶ 19. I point out that the majority does not seem to require magic words. That is, the majority does not say that a valid offer must include the words "offer" and "transfer title." For example, I suspect the majority would find a valid offer if Garcia had written: "Pursuant to the Lemon Law, I want a replacement car and I am willing to sign any papers or tender any papers needed to switch ownership of my current car to Mazda." Thus, I do not interpret the majority as holding that the legislature has mandated magic words. It follows that our disagreement is over whether the particular words used by Garcia communicated the offer required by the statute.

¶ 20. Garcia wrote:

> It is my understanding that the Lemon Law in the State of Wisconsin is that after a reasonable number of unsuccessful repair attempts by Mazda or its authorized dealers, or that the vehicle has been out of service for a specific number of days, that I'm entitled to either a comparable replacement vehicle or a refund of the purchase price. At this time the automobile has been out of service for a period of 16 days and I would like to have a replacement.

Thus, Garcia specified that she was making her request for replacement under Wisconsin's Lemon Law and she specified that she wanted a replacement vehicle. The majority says, in effect, "ah, but she did not actually offer to transfer title to her current car when she gets the replacement." I do not understand this thinking.

¶ 21. There can be no doubt that Mazda understood that Garcia was invoking her right to a replacement vehicle under WIS. STAT. § 218.0171(2)(c) and communicating to the company that she would transfer the title to her "lemon" to Mazda. Indeed, she was statutorily obligated to transfer title when Mazda gave her a replacement:

> When the manufacturer provides the new motor vehicle . . ., the consumer shall return the motor vehicle having the nonconformity to the manufacturer and provide the manufacturer with the certificate of title and all endorsements necessary to transfer title to the manufacturer.

WIS. STAT. § 218.0171(2)(c). It is nonsensical for the owner of a "lemon" to demand a replacement and not, at the same time, be offering to transfer title.

¶ 22. The plain language of the statute requires that the "lemon" owner communicate to the manufacturer his or her choice of remedy and a willingness to transfer title. Garcia did not simply demand a replacement. She specified that she was making her demand under the Wisconsin Lemon Law. The only reasonable way to read her letter is that she was notifying Mazda, pursuant to the Lemon Law, that she wanted a replacement car and would give up her car, including title, when Mazda supplied a replacement.

¶ 23. Did Mazda think Garcia was trying to trick it? Did Mazda think Garcia was asking for a replacement, but was not also offering to transfer title to her current car, so that she would end up with two cars? Of course not. And, just as plainly, she could not succeed in such trickery because the statute requires that she transfer title upon receiving the replacement vehicle. To repeat, the only reasonable reading of Garcia's letter

is that she was notifying Mazda that she wanted a replacement car and would, necessarily, give up her car, including title, when Mazda supplied a replacement.

¶ 24. Accordingly, I respectfully dissent.[1]

---

[1] Mazda and Hall cross-appeal, effectively supplying an alternative reason why they should prevail on appeal. I have reviewed this issue and would decide it against Mazda and Hall. However, because this is a dissent, I choose not to expend my limited resources writing on the topic.