[No. E049780. Fourth Dist., Div. Two. Mar. 2, 2011.]

JUANITA MARTINEZ, Plaintiff and Appellant, v.
KIA MOTORS AMERICA, INC., Defendant and Respondent.

## COUNSEL

Geller & Stewart, Michael S. Geller and Richard A. Stewart for Plaintiff and Appellant.

Greenberg Traurig, Kevin T. Collins and M. Theresa Tolentino Meehan for Defendant and Respondent.

## OPINION

**KING, J.—**

### I. INTRODUCTION

Plaintiff and appellant Juanita Martinez purchased a new 2002 Kia Sedona. She experienced significant problems with the vehicle within the warranty period and took it to two Kia dealerships for repair. The dealerships denied warranty coverage and told her she would have to pay for the repair. Unable to pay, she left the vehicle at a dealership. It was later repossessed and sold. Plaintiff filed an amended complaint against defendant and respondent Kia Motors America, Inc., alleging two violations of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.)[1] (the Act): breach of express warranty (§ 1793.2) and breach of the implied warranty of merchantability (§ 1792). Defendant moved for summary judgment on the ground that plaintiff was not entitled to any of the remedies provided by the Act because she no longer possessed the vehicle. In granting summary judgment, the trial court ruled that plaintiff could not seek replacement or reimbursement under the Act because she no longer possessed the vehicle. We disagree.

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

■ "The Song-Beverly Act is a remedial statute designed to protect consumers who have purchased products covered by an express warranty. [Citation.] One of the most significant protections afforded by the act is . . . that 'if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer . . . .' [Citation.]" (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 798 [50 Cal.Rptr.3d 731], fn. omitted.) In providing these remedies, the Legislature has not required that the consumer maintain possession of the goods at all times. All that is necessary is that the consumer afford the manufacturer a reasonable number of attempts to repair the goods to conform to the applicable express warranties. On this basis we reverse the judgment.

## II. FACTS

In July 2002, plaintiff purchased a new Kia Sedona. The sale of the vehicle was accompanied by an express written warranty for 60 months or 60,000 miles, issued by defendant. Within the first year, plaintiff began noticing a burning smell emanating from the vehicle. She complained about the smell to the dealer on at least four occasions during the first three years. The dealer did nothing about the problem. No other mechanical problems were experienced throughout the first three years of ownership.

On June 18, 2005, the odometer reading on the car was 38,162 miles. While plaintiff was driving the car on that date, the vehicle started shaking and making strange noises; smoke started coming from the engine compartment. Plaintiff smelled a strong acidic odor, which she believed to be battery acid. The lights and windows began malfunctioning. She pulled to the side of the road. While there, a good samaritan, who was a mechanic at a local car care center, visually inspected the engine area and believed the alternator had overcharged the battery. Plaintiff called her son, who purchased and installed a new battery. The vehicle would not start. The car was then towed to a local dealership, Kia of Riverside.

After being denied warranty service at Kia of Riverside, the car was towed to another dealer, Kia of Temecula, for repairs. A "master technician" spent approximately 10 hours inspecting and working on the car and concluded that plaintiff had incorrectly tried to jump-start the vehicle battery by reversing the polarity, thus causing the problems. Warranty coverage was denied. The

technician did not test the alternator during the inspection because the dealership did not have the means to do so. Following the Temecula dealership's refusal to repair the car, plaintiff, unable to use the vehicle, left it at the dealership "so they could fix it."

After plaintiff stopped making payments, the vehicle was repossessed by the lienholder in February 2006. In the meantime, Kia of Temecula had charged plaintiff $901 in storage fees. These were paid by the lienholder. Following repossession and sale, the vehicle was towed to Kia of Glendale, which determined that the car's alternator had been overcharging and causing damage to electrical components. Kia of Glendale made the necessary repairs, which were paid for by defendant pursuant to the warranty.

## III. ANALYSIS

As framed by the parties, this appeal is limited to the question of whether a plaintiff must possess or own the vehicle at issue in order to obtain replacement or restitution pursuant to the Act. We hold that under the applicable statutes a plaintiff does not need to possess or own the vehicle to avail himself or herself of the Act's remedies. To judicially impose such a requirement into the Act is contrary to the purpose of the Act and runs afoul of principles relating to statutory construction.

### A. *Standards of Review and Statutory Construction*

"Summary judgment is properly granted if there is no question of fact and the issues raised by the pleadings may be decided as a matter of law. . . . [¶] On appeal, 'we review the record de novo, considering all the evidence set forth in the moving and opposition papers . . .' [citation] . . . . Inasmuch as the grant or denial of a motion for summary judgment strictly involves questions of law, we must reevaluate the legal significance and effect of the parties' moving and opposing papers." (*Dominquez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53, 57 [72 Cal.Rptr.3d 354].)

■ We review questions of statutory construction de novo. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387 [97 Cal.Rptr.3d 464, 212 P.3d 736].) In construing statutes, our goal is to ascertain the intent of the Legislature in order to effectuate the law's purpose. (*Ibid.*) "We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language

permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Id.* at pp. 387–388.) We may not change the scope of a statute "by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 [85 Cal.Rptr.3d 466, 195 P.3d 1049].)

When more than one statutory construction is arguably possible, our policy is " 'to favor the construction that leads to the more reasonable result.' [Citation.] This policy derives largely from the presumption that the Legislature intends reasonable results consistent with the apparent purpose of the legislation. [Citation.] Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results." (*Imperial Merchant Services, Inc. v. Hunt, supra*, 47 Cal.4th at p. 388.)

B. *Statutory Language of the Act Does Not Support Defendant's Construction*

■ The Act provides certain protections and remedies for consumers who purchase consumer goods such as motor vehicles covered by express warranties. (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 121 [41 Cal.Rptr.2d 295].) Among other requirements, a manufacturer of consumer goods covered by an express warranty and sold in California must generally maintain service and repair facilities within the state. (§ 1793.2, subd. (a).) If the goods do not conform to the applicable express warranties, they must generally be serviced or repaired within 30 days. (§ 1793.2, subd. (b).) In order to trigger the manufacturer's service and repair obligations, the buyer (as is relevant here) "shall deliver nonconforming goods to the manufacturer's service and repair facility within this state . . . ." (§ 1793.2, subd. (c).)

Section 1794 sets forth the buyer's remedies in the event of a violation of the Act by the manufacturer. Under subdivision (a) of section 1794, a buyer of consumer goods who is damaged by any failure to comply with any obligation under the Act or an implied or express warranty may bring an action for the recovery of damages and other legal and equitable relief. Section

1794, subdivision (b) provides: "The measure of the buyer's damages in an action under this section shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2 . . . ."

As pertinent here, subdivision (d)(2) of section 1793.2 provides: "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B)."[2]

■ The plain language of these statutes does not support defendant's construction. Significantly, nowhere does the Act provide that the consumer must own or possess the vehicle at all times in order to avail himself or herself of these remedies. All the Act requires of the buyer is that the buyer "deliver [the] nonconforming goods to the manufacturer's service and repair facility" for the purpose of allowing the manufacturer a reasonable number of attempts to cure the problem. (§ 1793.2, subds. (c), (d); see *Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 303 [45 Cal.Rptr.2d 10].)[3] Once this delivery occurs and the manufacturer fails to cure the problem, the "manufacturer shall" replace the vehicle or reimburse (make restitution to) the buyer. (§§ 1794, subd. (b), 1793.2, subd. (d)(2).) The Act says nothing about the buyer having to retain the vehicle after the manufacturer fails to comply with its obligations under its warranty and the Act. If the Legislature intended to impose such a requirement, it could have easily included language to that effect. It did not. "We may not rewrite the section to conform to that unexpressed, supposed intent." (*Jiagbogu v. Mercedes-Benz USA* (2004) 118 Cal.App.4th 1235, 1241 [13 Cal.Rptr.3d 679] (*Jiagbogu*).)[4]

---

[2] Subdivision (d)(2)(A) and (B) of section 1793.2 simply provide that in the case of replacement "the manufacturer shall replace the buyer's vehicle with a new motor vehicle substantially identical to the vehicle replaced," and, in the case of restitution, "the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer . . . ." Subdivision (d)(2)(C) of section 1793.2 indicates that in either instance the diminution in value attributable to the buyer's use will be either reimbursed to the manufacturer or offset against the amount paid by the manufacturer.

[3] Here, the vehicle was delivered to the manufacturer on numerous occasions and was eventually left at its Temecula facility. At no time did defendant cure the defects or offer to replace the vehicle or reimburse plaintiff.

[4] Within the context of statutory construction, defendant argues that return of the vehicle is "compelled" by language in sections 1793.22, subdivision (f) and 1793.23 subdivisions (d) and (e). We disagree. These sections merely place upon a dealer of a car "reacquired" by the manufacturer a duty to notify any subsequent transferee that the car was "reacquired" because of a nonconformity. Because defendant did not "reacquire" the present vehicle, the statutes are simply inapplicable and do not assist our interpretation of the relevant provisions.

## C. *Policy Considerations Support the Plain Language of the Act*

■ Our construction of the Act is in line with the legislative intent and purpose of the law. "[T]he Song-Beverly Act is strongly pro-consumer, expressly providing that waiver of its provisions by a buyer, 'except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void.' (Civ. Code, § 1790.1.) The Act also makes clear its pro-consumer remedies are in addition to those available to a consumer pursuant to the [Uniform] Commercial Code (Civ. Code, § 1790.3) and the Unfair Practices Act (Civ. Code, § 1790.4). The Act 'is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action. [Citation.]' [Citation.]" (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 [73 Cal.Rptr.2d 682, 953 P.2d 858].) To read into the statute an unexpressed requirement that the consumer possess or own the vehicle as a condition to obtaining relief would have a chilling effect on the availability of the Act's remedies. If a manufacturer refuses to comply with its obligations under the Act to repair a defective vehicle, the buyer may have to spend years in litigation pursuing his or her remedies under the Act; if a buyer who had financed the purchase of the car must retain ownership of the unusable vehicle throughout this time, he or she will need to continue paying for the derelict vehicle, as well as any replacement vehicle. Faced with this situation, many consumers would reasonably do just what plaintiff did here—discontinue the payments and allow the vehicle to be repossessed. Nevertheless, according to defendant, such a buyer should be necessarily precluded from the reimbursement remedy provided under the Act. Not only is this inconsistent with the proconsumer policy supporting the Act, but it would encourage a manufacturer who has failed to comply with the Act to delay or refuse to provide a replacement vehicle or reimbursement; any delay increases the likelihood that the buyer will be forced to relinquish the car to a lienholder. "Interpretations that would significantly vitiate a manufacturer's incentive to comply with the Act should be avoided." (*Jiagbogu, supra,* 118 Cal.App.4th at p. 1244.)

To require the consumer to maintain the nonconforming vehicle throughout the litigation is simply not part of the statute. Defendant's construction of the statute is calculated to allow the manufacturer to sidestep the protections afforded the consumer by the Act and encourage "the manufacturer's unforthright approach and stonewalling of fundamental warranty problems." (*Krotin v. Porsche Cars North America, Inc., supra,* 38 Cal.App.4th at p. 303.)

## D. Out-of-state Cases Based on Other Statutes Are Inapposite

To support its argument, defendant relies on a number of out-of-state cases.[5] On the basis of these authorities, it argues that automobile lemon laws require the return of the vehicle by the consumer as a condition for receiving reimbursement and/or restitution. The cases relied upon are from the States of Minnesota, Arizona, Maryland, Louisiana, Pennsylvania, Tennessee, and Wisconsin. These cases are inapposite. In each case, the respective jurisdiction's "lemon law" has a specific provision that, in order for the consumer to receive a refund, reimbursement, or restitution, the consumer must return the vehicle. Statutorily, California has no such requirement. The absence of such a provision is telling.

In *Pfeiffer*, the court applied Minnesota Statutes section 325F.665 in holding that "dismissal of this Lemon Law suit must be affirmed because appellants failed to tender the vehicle as required by the statute." (*Pfeiffer v. Ford Motor Co., supra*, 517 N.W.2d at p. 79.) *Highway Sales, Inc. v. Blue Bird Corp., supra*, 559 F.3d 782, a case also out of Minnesota, relied on the same statute in denying recovery to an allegedly defective motor home. In *Hull v. DaimlerChrysler Corp., supra*, 99 P.3d 1026, the court premised its decision on Arizona Revised Statutes section 44-1263, which provides that the manufacturer shall accept return of the vehicle from the consumer and refund the full purchase price. In *Mercedes-Benz*, the Maryland court relied on Maryland Commercial Law Code Annotated section 14-1502(c)(1)(ii), which provides that the manufacturer shall "[a]ccept *return of the motor vehicle from the consumer* and refund to the consumer the full purchase price." (*Mercedes-Benz v. Garten, supra*, 618 A.2d at p. 241.) In its ruling, the court stated: "[Plaintiff] had only one other remedy under the Lemon Law, to return the 1990 300E and obtain a refund of the full purchase price. [Plaintiff], however, disposed of the automobile when he traded it in to another Mercedes-Benz dealer and, as a result, waived the remedy . . . ." (*Id.* at pp. 241–242.)[6]

---

[5] Defendant relies on *Pfeiffer v. Ford Motor Co.* (Minn.Ct.App. 1994) 517 N.W.2d 76; *Hull v. DaimlerChrysler Corp.* (Ct.App. 2004) 209 Ariz. 256 [99 P.3d 1026]; *Highway Sales, Inc. v. Blue Bird Corp.* (8th Cir. 2009) 559 F.3d 782; *Coppock v. DaimlerChrysler Corp.* (E.D.Tenn., Aug. 28, 2007, No. 4:06-cv-26) 2007 WL 2471723; *Simons v. Mercedes-Benz of North America, Inc.* (E.D.Pa., Mar. 7, 1996, No. CIV. A. 95-2705) 1996 WL 103796; *Berry v. General Motors Corp.* (E.D.Pa., July 28, 1989, CIV. A. No. 87-3237) 1989 WL 86224; *Smyser v. Western Star Trucks* (2001) 2001 WIApp 180 [247 Wis.2d 281, 634 N.W.2d 134]; *Mercedes-Benz v. Garten* (1993) 94 Md.App. 547 [618 A.2d 233]; *Smith v. General Motors Acceptance Corp.* (La.Ct.App. 1989) 542 So.2d 831.

[6] Contrary to Maryland law, section 1790.1 provides: "Any waiver by the buyer of consumer goods of the provisions of this chapter, except as expressly provided in this chapter, shall be deemed contrary to public policy and shall be unenforceable and void."

In *Smith v. General Motors Acceptance Corp., supra*, 542 So.2d 831, a case arising out of Louisiana, the court, in denying the plaintiff recovery, relied on Louisiana Revised Statutes section 51:1945, which provides: "At the time of receiving the comparable new motor vehicle or refund . . . the consumer . . . shall surrender the motor vehicle subject to the nonconformity to the manufacturer . . . ." In *Coppock*, the federal district court for the Eastern District of Tennessee relied on the express language of Tennessee Code Annotated section 55-24-103(a) that the manufacturer must "accept return of the vehicle and refund the purchase price to the consumer." (*Coppock v. DaimlerChrysler Corp., supra*, 2007 WL 2471723 at p. *2.) And lastly, in both *Simons v. Mercedes-Benz of North America, Inc., supra*, 1996 WL 103796 and *Smyser v. Western Star Trucks, supra*, 634 N.W.2d 134, the federal district court for the Eastern District of Pennsylvania, and the Wisconsin state court of appeal, respectively, relied upon the express statutory language of 73 Pennsylvania Statutes section 1955 and Wisconsin Statutes section 218.0171(2)(c) in holding that the consumer must deliver the subject vehicle to the manufacturer before said consumer is entitled to a refund.

The absence of a similar express statutory requirement in California's "lemon law" is significant. In line with the legislative intent and purpose, there is simply no requirement that California consumers be able to tender the allegedly defective car for purposes of availing themselves of the remedies provided by the Act.

A simple reading of the Act, in conjunction with the provisions of other states' statutes, clearly demonstrates that in California, unlike other states, a consumer need not own or possess the nonconforming vehicle for purposes of maintaining an action and receiving the benefits of the Act.

E. *Common Law Rescission Principles and the Uniform Commercial Code Do Not Limit the Act's Remedies*

Under common law and the California Uniform Commercial Code, a party seeking to rescind a contract must generally return any consideration received. Pursuant to Civil Code section 1691, subdivision (b), a rescinding party must "[r]estore . . . everything of value which he has received . . . under the contract . . . ." Under California Uniform Commercial Code sections 2604 and 2608, where a buyer revokes acceptance of the goods, "the buyer may store the rejected goods for the seller's account or *reship them to him* or resell them for the seller's account . . . ." (Cal. U. Com. Code, § 2604, italics

added.) Defendant argues that these principles also apply to the restitution remedy under the Act. We disagree.

*Jiagbogu, supra*, 118 Cal.App.4th 1235 is instructive. There, the plaintiff experienced acceleration problems with his vehicle over a period of three years. The problems began within one week of the purchase. (*Id.* at p. 1239.) He brought the car to the dealership for repairs when the car had 1,020 miles on its odometer. One year later, when the car had 9,464 miles on the odometer, the plaintiff complained of lack of power during acceleration. Over the next one and one-half years, the plaintiff returned to the dealership on various occasions complaining of acceleration problems. At 40,000 miles, the plaintiff requested that the manufacturer replace or buy back the vehicle. (*Ibid.*) Three years after the vehicle's purchase and with approximately 50,000 miles on the odometer, the plaintiff filed suit against the manufacturer, Mercedes-Benz USA (MBUSA). By way of a special verdict, the jury awarded the plaintiff $144,676 in damages. (*Id.* at pp. 1239–1240.)

On appeal, MBUSA contended that the plaintiff's request for restitution amounted to a rescission of the contract. As such, the plaintiff's use of the vehicle after he requested restitution or replacement was a waiver of his right to rescind. (*Jiagbogu, supra*, 118 Cal.App.4th at p. 1240.) In rejecting MBUSA's argument that seeking restitution amounted to a rescission of the contract, the court in *Jiagbogu* stated: "[Civil Code] section 1793.2 does not refer to rescission or any portion of the [California Uniform] Commercial Code that discusses rescission. The Act does not parallel the [California Uniform] Commercial Code; it provides different and more extensive consumer protections. [Citation.] [Plaintiff] did not invoke rescission, or any of the common law doctrines or [California Uniform] Commercial Code provisions relating to that remedy. It would not matter if he had referred to rescission in his buyback request, as long as he sought a remedy only under the Act, which contains no provision requiring formal rescission to obtain relief." (*Ibid.*)

The court further explained: "MBUSA contends that regardless of the language in the Act, [Civil Code] section 1793.2 describes a rescission that should be subject to common law and [California Uniform Commercial Code] rules for rescission. In practice, a consumer usually will have to request replacement or restitution under the Act, since most manufacturers do not offer these options voluntarily. [Citation.] MBUSA argues that a buyback request is 'the very definition of rescission.' But as we have seen, the Act is designed to give broader protection to consumers than the common law or [California Uniform Commercial Code] provide. [Citation.] Had the Legislature intended this more protective statute to be limited by traditional doctrines, or the remedies provided in [Civil Code] section 1793.2, subdivision (d)

to be treated as a rescission under common law, it surely would have used language to that effect. We may not rewrite the section to conform to that unexpressed, supposed intent. [Citations.] [¶] . . . [¶] . . . [W]e reject MBUSA's basic argument that a request for replacement or refund under the Act constitutes rescission . . . ." (*Jiagbogu, supra,* 118 Cal.App.4th at pp. 1241–1242.)

Here, the fallacy with defendant's position, as with MBUSA's argument in *Jiagbogu,* is that defendant attempts to insert common law and/or California Uniform Commercial Code provisions into the Act. As *Jiagbogu* indicates, this is simply inappropriate.

Defendant relies on *Mitchell v. Blue Bird Body Co.* (2000) 80 Cal.App.4th 32 [95 Cal.Rptr.2d 81] and *Alder v. Drudis* (1947) 30 Cal.2d 372 [182 P.2d 195]. Defendant's reliance on *Mitchell*'s discussion is not only misplaced, but is not contextual. In *Mitchell,* the issue was whether the manufacturer, in making restitution to the purchaser, had to reimburse the purchaser's finance charges. In answering the question in the affirmative, the Court of Appeal stated that the remedy was intended to restore the status quo, that is, make " 'complete relief, including restitution of benefits . . . and any consequential damages to which [the purchaser] is entitled . . . .' [Citation.]" (*Mitchell v. Blue Bird Body Co., supra,* at p. 36.) *Mitchell* has no application to the issues in this case and *Alder* predates the Act by 23 years and applies common law rules of equity. As the *Jiagbogu* court stated, "principles of equity [cannot] be used to avoid a statutory mandate. [Citation.]" (*Jiagbogu, supra,* 118 Cal.App.4th at p. 1244.)

## F. *Conclusion*

 In sum, there is no requirement under the statutory provisions of the Act that, as a matter of law, a consumer must maintain ownership or control of the nonconforming vehicle for purposes of claiming the benefits of the Act. Nor is there any statutory support for the notion that a consumer loses the protection of the Act once the nonconforming vehicle is repossessed.

"The Legislature, of course, may change the statutory scheme in question to satisfy the desires of vehicle manufacturers. As it stands now, however, the manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle." (*Krotin v. Porsche Cars North America, Inc., supra,* 38 Cal.App.4th at p. 303.)

## IV. DISPOSITION

The judgment is reversed. Plaintiff is awarded her costs on appeal.

Hollenhorst, Acting P. J., and Richli, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 8, 2011, S192160.