Filed 2/27/23 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| MELISSA A. WILLIAMS et al., | C091902 |
| Plaintiffs and Appellants, | (Super. Ct. No. 17CV02617 |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| FCA US LLC, | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Butte County, Tamara L. Mosbarger, Judge. Reversed.

Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Jeffrey Gurrola; Knight Law Group, Steve Mikhov, Roger Kirnos, Deepak Devabose; Wirtz Law, Richard M. Wirtz, Amy R. Rotman and Jessica R. Underwood for Plaintiffs and Appellants.

Horvitz & Levy, Lisa Perrochet, Shane H. McKenzie, John A. Taylor, Jr.; Nixon Peabody, Jennifer A. Kuenster, Leon V. Roubinian and Kristi J. Livedalen for Defendant and Respondent.

1

THE COURT:

It is ordered that in response to the petition for rehearing filed by defendant FCA US LLC, the opinion filed in this case on February 1, 2023, be modified as follows:

1.  On page 17, the last full paragraph, beginning "Manufacturer also argues the Act," and the paragraph commencing at the bottom of page 17, beginning "We fail to see" are deleted and the following paragraphs inserted in their place:

Manufacturer also argues the Act makes clear the buyer is expected to return the vehicle to the manufacturer, relying on section 1793.23, subdivisions (c) through (e) and our Supreme Court's statement in *Kirzhner* that " 'buyers and lessees are legally required to pay . . . registration renewal fees incurred prior to the vehicle's transfer back to the manufacturer.' " (Citing *Kirzhner*, *supra*, 9 Cal.5th at p. 980.) Manufacturer asserts it is clear a buyer must return the vehicle to the manufacturer because section 1793.23 "states in four different places that a defective vehicle is 'accepted for restitution' by the manufacturer." We find these arguments inapplicable in determining the meaning of the phrase "the actual price paid or payable by the buyer," as provided in the restitution provision.

Initially, manufacturer's reliance on *Kirzhner* is misplaced. Our Supreme Court in that case did not consider whether a buyer must return a vehicle to pursue restitution. Cases are not authority for propositions not considered. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.) For this same reason, we find no merit in manufacturer's reliance on the first introductory sentence in *Gavaldon*, as relied upon in manufacturer's petition for rehearing, which states, "[W]hen a manufacturer does not repair a motor vehicle to conform to an express warranty after 'a reasonable number of attempts,' the buyer may opt to have the item replaced, or may return the item and obtain restitution for its cost . . . ." (*Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1250.) *Gavaldon* did not consider whether a buyer *must* return a vehicle in order to pursue an action for restitution. (*Ibid*. [considering "whether a service contract is an express warranty within the meaning of the Act"].)

Section 1793.23 also does not assist manufacturer. Section 1793.23, subdivisions (c) through (e) pertain to situations in which the manufacturer or dealer "reacquires" the defective vehicle. These provisions are inapplicable in the situation where, as here, the manufacturer elects not to reacquire the vehicle and the buyer is forced to seek legal intervention. Nothing in those provisions state the buyer is entitled to restitution *only if* the manufacturer reacquires the defective

2

vehicle. Indeed, as manufacturer acknowledges, *Martinez* held the exact opposite. (*Martinez*, *supra*, 193 Cal.App.4th at pp. 194, 196 [a buyer need not own or possess the defective vehicle to pursue remedies under the Act].)

In a footnote, manufacturer states: "For purposes of this case, [it] does not challenge the holding in *Martinez* because that is not necessary to obtain affirmance of the judgment. But if, contrary to *Martinez*, the Act were read according to the plain language that contemplates return of the vehicle as part of the restitution process, the question presented in this case would be moot: owners could not pocket both the resale value and the statutory damages award as restitution (as they attempt to do here) because their failure to return the vehicle would preclude such an award." Manufacturer has provided us with no basis or argument to depart from the holding in *Martinez*. We do not consider manufacturer's new arguments raised in its petition for rehearing in that regard. We further find no merit in manufacturer's attempt to distinguish *Martinez* on the basis that, here, "[t]here is no evidence that" buyers had "no choice but to dispose of the vehicle . . . while a manufacturer dragged its feet in complying with the Act." The *Martinez* court's holding was not fact specific; it was instead based on statutory interpretation. (*Martinez*, *supra*, 193 Cal.App.4th at pp. 193-196.)

Dovetailing the forgoing argument, manufacturer further argues that disallowing the trade-in credit would frustrate the Act's "extensive provisions aimed at protecting consumers who might later acquire defective vehicles as used cars," as discussed in *Niedermeier*, *supra*, 56 Cal.App.5th at page 1061 (rev. granted). We disagree. It makes no sense that the labeling and notification requirements in the Act would be promoted if we read the *restitution provision* to reduce a buyer's recovery by the amount of the trade-in value of the defective vehicle. The defective vehicle has already been sold; the manufacturer simply gets the benefit of reducing its restitution obligation while obviating the responsibility it would otherwise have if it had reacquired the defective vehicle. As aptly explained in *Figueroa*, such a result does not further the pro-consumer and remedial intent behind the Act.

2. On page 20, the last two sentences of the first paragraph, beginning with "It is further significant that a buyer" and "Thus, a buyer may sell" are deleted.

3. At the beginning of the last paragraph on page 20, after the first sentence ending "seeks restitution under the Act," add as footnote 9 the following footnote:

3

**9** Manufacturer invites this court to address an issue first raised in its petition for rehearing, i.e., whether damages provisions in the Commercial Code, rather than the Act's restitution provision, apply when a buyer cannot or does not return the vehicle to the manufacturer. We decline the invitation. Our review in this appeal is limited to whether the jury erred in deducting the trade-in credit when it calculated "the actual price paid or payable to the buyer," as provided in the restitution provision.

4. On page 20, the fourth sentence of the first paragraph, beginning "It is significant the Legislature" is deleted and the following sentence is inserted in its place:

It is significant the Legislature vested *the buyer* with the right and power to elect restitution in lieu of replacement. (§ 1793.2, subd. (d)(2).)

5. On page 20, in the first sentence of the first full paragraph, beginning "Under manufacturer's and the *Niedermeier* court's interpretation," the word "elects" is changed to "accepts" and "instead of restitution" is removed so the sentence reads:

Under manufacturer's and the *Niedermeier* court's interpretation, if a buyer accepts a replacement vehicle, the buyer need not pay to the manufacturer the value he, she, or they received for the defective vehicle.

There is no change in the judgment.

Defendant's petition for rehearing and its request for judicial notice are denied.

4

BY THE COURT:


/s/_____
Robie, Acting P. J.



/s/_____
Hull, J



/s/_____
Duarte, J.

Filed 2/1/23 (unmodified opinion)

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----


| | |
|---|---|
| MELISSA A. WILLIAMS et al., | C091902 |
| Plaintiffs and Appellants, | (Super. Ct. No. 17CV02617) |
| v. | |
| FCA US LLC, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Butte County, Tamara L. Mosbarger, Judge.  Reversed.

Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Jeffrey Gurrola; Knight Law Group, Steve Mikhov, Roger Kirnos, Deepak Devabose; Wirtz Law, Richard M. Wirtz, Amy R. Rotman and Jessica R. Underwood for Plaintiffs and Appellants.

Horvitz & Levy, Lisa Perrochet, Shane H. McKenzie, John A. Taylor, Jr.; Nixon Peabody, Jennifer A. Kuenster, Leon V. Roubinian and Kristi J. Livedalen for Defendant and Respondent.

1

Plaintiffs Melissa A. Williams and Geoffrey G. Williams (collectively buyers) sued defendant FCA US LLC (manufacturer) for violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et. seq.)[1] (Act), popularly known as the lemon law, seeking restitution for a defective truck that was manufactured and warranted by manufacturer. When a buyer seeks restitution from an automobile manufacturer for a defective vehicle under section 1793.2, subdivision (d)(2)(B) (restitution provision), the buyer is entitled to "an amount equal to the actual price paid or payable by the buyer," as specified. "The manufacturer must also pay for any 'collateral charges' [citation] and 'incidental damages' incurred [citation]." (*Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 969 (*Kirzhner*).) The manufacturer is, however, entitled to an offset for the buyer's use of the vehicle prior to the buyer first delivering the vehicle for repair, as specified. (§ 1793.2, subd. (d)(2)(C).)

In this case, buyers sought restitution from manufacturer after trading in the defective truck for another vehicle at an unrelated dealership. The parties disputed whether manufacturer was entitled to a credit for the trade-in value of the truck in calculating "the actual price paid or payable by the buyer" under the restitution provision. Instead of resolving the question of statutory interpretation presented, the trial court transmitted the question to the jury and told the parties the jury would decide, based on the parties' closing arguments, what should be included in "the actual price paid."

The jury found manufacturer breached its express written warranty to buyers when it (or its authorized repair facility) failed to repair the defects in buyers' truck "to match the written warranty after a reasonable number of opportunities to do so." The jury further found manufacturer willfully failed to promptly replace or repurchase the defective truck and awarded buyers $46,716.54, consisting of $15,572.18 in total

---

[1]    Undesignated statutory references are to the Civil Code.

damages and a $31,144.36 civil penalty. The trial court subsequently denied buyers' motion for a new trial, in which buyers argued the damages were inadequate as a matter of law because the jury's calculation of "the actual price paid or payable" impermissibly deducted the $29,500 credit buyers previously received when they traded in the defective truck for a new vehicle.[2] Buyers appeal.

The principal question presented is whether the jury impermissibly deducted the trade-in credit when it calculated "the actual price paid or payable by the buyer," as provided in the restitution provision. Buyers present two arguments in this regard: (1) the trial court prejudicially erred by modifying the jury verdict form to allow manufacturer to seek and obtain the deduction for the trade-in value of the defective truck; and (2) the trial court erred in denying their new trial motion. We analyze the issue under the rubric of reviewing a new trial motion.

Although it may at first blush seem reasonable that a buyer's restitution under the Act should exclude a credit the buyer received for trading in the defective vehicle, we conclude the language of the restitution provision, our Supreme Court's prior interpretation of the term "price" in the restitution provision, and the legislative history indicate otherwise. We thus disagree with *Niedermeier v. FCA US LLC* (2020) 56 Cal.App.5th 1052 (*Niedermeier*), review granted February 10, 2021 (S266034), and reach the same conclusion (under a different analysis) as *Figueroa v. FCA US, LLC* (2022) 84 Cal.App.5th 708 (*Figueroa*).[3]

---

[2]     The parties agree the jury reduced buyers' damages award by the $29,500 trade-in credit buyers previously received for the defective truck.

[3]     Our Supreme Court has granted itself an extension of time to review whether to grant review of *Figueroa*, *supra*, 84 Cal.App.5th 708 (petn. for review pending, petn. filed Dec. 2, 2022, time for grant or denial of review extended to Mar. 2, 2023, S277547).

We reverse the judgment and the order denying the motion for a new trial and remand the cause for further proceedings. In light of the reversal, we do not reach buyers' remaining claims of error regarding the denial of prejudgment interest or application of Code of Civil Procedure section 998.

FACTUAL AND PROCEDURAL BACKGROUND

Buyers purchased a certified pre-owned truck manufactured and warranted by manufacturer; the truck had 43,888 miles on the odometer. Buyers purchased the truck for $54,362.48, providing a $5,000 down payment and financing $39,530.60 at a finance charge of $9,831.88. The monthly payments on the truck were $685.59.

The purchase price included: a cash price of $37,499; $189 for a theft deterrent tracker device; $2,832.60 in sales tax; a $15 registration charge; $795 in "GAP" insurance (to pay off the loan in the event of a total loss of the truck); $2,499 for a service contract; $621 in fees; and an $80 document processing charge.[4]

The following jury findings are not challenged on appeal: the truck had defects covered by a written warranty; the defects "substantially impaired the vehicle's use, value, or safety"; manufacturer "or its authorized repair facility" failed to repair the truck in accordance with the written warranty "after a reasonable number of opportunities to do so"; manufacturer willfully failed "to promptly replace or repurchase" the truck; and the truck had been driven 19,850 miles "between the time [buyers] took possession of the vehicle and the time when they first delivered the vehicle to [manufacturer] or its authorized repair facility to fix the problem."

Prior to filing suit, buyers traded the defective truck in at an unrelated dealer and there purchased a new vehicle made by a different manufacturer. Buyers testified they told the dealer that the truck "had been in the shop" and "[d]isclosed everything that was

---

[4] These items total $44,530.60 (i.e., the sum of the $5,000 down payment and the $39,530.60 financed amount).

wrong with it." The new sale paperwork shows buyers owed $34,953.33 on the defective truck. The dealer credited buyers a trade-in value of $29,500 for the truck, and buyers rolled the remaining $5,453.33 owed on the truck into the new loan.

Pertinent to this appeal, buyers sued manufacturer for breach of express warranty under the Act. Manufacturer served buyers with two Code of Civil Procedure section 998 offers to compromise, both of which the parties agree were rejected. When the case proceeded to trial, manufacturer submitted a brief regarding the calculation of buyers' damages. Manufacturer asserted it was entitled to a monetary offset based on the trade-in value of the truck. In that vein, manufacturer submitted a proposed special jury instruction stating: "To calculate the amount paid by the [buyers] for the subject vehicle, do not include the trade-in value for the subject vehicle." Buyers disagreed that manufacturer was entitled to a monetary offset for the trade-in value of the truck and opposed the proposed special jury instruction.

The trial court declined to give manufacturer's proposed special jury instruction and instead instructed buyers to modify the verdict form as to the question of damages by changing the language in the first subpart of the damages question from asking the jury to determine the "purchase price" of the truck to asking the jury to determine the "actual price paid" for the truck. The trial court explained "that's the language used in this statute" and the change would allow the parties "to argue their position as to what the amount actually paid was"—i.e., buyers could argue "the amount actually paid [was] the purchase price" and manufacturer could argue "the amount paid [was] the purchase price minus the trade-in value." The trial court said: "It is not an offset. It is what you think the actual price paid is. You can argue what you think the actual price paid is. And we'll throw it to the jury."[5]

---

[5] Although we do not analyze buyers' jury verdict argument, we note it was the trial court's duty to interpret the statute when the parties requested a ruling on the meaning of

5

The trial court instructed the jury: "If you decide [manufacturer] or its authorized repair facility failed to repair the defect after a reasonable number of opportunities, then [buyers] are entitled to recover the amount they paid for the car including: [¶] One, the amount paid to date for the vehicle including finance charges; [¶] Two, charges for transportation and manufacturer-installed options; [¶] Three, sales tax, use tax, license fees, registration fees, and other official fees."

During closing arguments, buyers argued the actual price paid for the truck was $37,499, as reflected in the sales contract and "[t]here [was] no offset other than the mileage" identified on the verdict form. Buyers thus asked the jury not to offset the $29,500 trade-in value of the truck against the purchase price of the truck, arguing manufacturer had "been paid in full for everything [it] expected" when the truck was sold.

Manufacturer argued buyers were not entitled "to the full purchase price of the truck" because they received $29,500 when they traded the truck in. Manufacturer's counsel asserted, "That is what we call a windfall. The [A]ct is not designed t[o] bestow a windfall on anyone. The [A]ct is designed to make the customer whole. . . . [¶] The verdict form is clear. It asks you what was actually paid by the plaintiffs for the [truck]. And I have broken down that amount for you. That amount does not include the [$]29,500, because they didn't actually pay for that amount."

The case proceeded to trial and the jury returned a verdict in favor of buyers. The jury found manufacturer breached the express written warranty it owed to buyers. As to damages, the jury found "[t]he actual price paid" for the truck was $17,994.82, and buyers had incurred $554 in incidental and consequential damages. The jury found the buyers' "value of use" was $2,976.64 in terms of the number of miles driven before the

_____

the restitution provision. Matters of statutory interpretation should not be delegated to the jury, as was done here. (See *Weinstein v. County of Los Angeles* (2015) 237 Cal.App.4th 944, 965.)

6

vehicle was first delivered for repair. After subtracting the "value of use" amount, the jury found buyers' total damages to be $15,572.18. The jury further found that manufacturer willfully failed to repurchase or replace the vehicle, awarding buyers a $31,144.36 penalty. The trial court issued a judgment in favor of buyers in the amount of $46,716.54.

Buyers filed a motion for a new trial, requesting "a limited new trial of the restitution base damage amount, conditioned on [manufacturer] accepting an additur in the amount of the trade-in credit that defense counsel argued for -- and that the jury erroneously subtracted -- from the judgment." Buyers explained "the jury's finding that [buyers] 'actually paid' only $17,994.82 for the vehicle shows that the jury mistakenly applied a $29,500 trade-in credit offset" because the amount awarded was exactly $99.28 more than the damages amount advanced by manufacturer. The $99.28 coincided with an interest charge reflected on buyers' payment transaction history detail, which "was subsequently zeroed out" and was mistakenly added to the award by the jury. Buyers asserted, "Because the jury applied an impermissible offset, the damages award [was] inadequate as a matter of law." The trial court denied the motion.[6]

The trial court awarded buyers $322.56 in postverdict prejudgment interest but denied their request for preverdict prejudgment interest because buyers' "damages were not certain, or capable of being rendered certain, prior to entry of the jury's verdict." The trial court also awarded buyers $78,837.50 in attorney fees and $11,351.98 in costs, declining to award attorney fees and taxing all costs incurred after manufacturer's

---

[6] Buyers filed the new trial motion on February 18, 2020. The trial court issued an order denying the new trial motion on May 26, 2020. Buyers argue the trial court did not have jurisdiction to rule on the new trial motion and the new trial motion was denied by operation of law pursuant to Code of Civil Procedure section 660, subdivision (c) because the trial court failed to rule on the motion within 75 days. We do not address this argument because it is irrelevant to the issue presented on appeal. The only salient fact is that the new trial motion was denied.

7

January 25, 2019 Code of Civil Procedure section 998 offer to compromise because buyers did not obtain a more favorable judgment at trial. The trial court awarded manufacturer $17,031.26 in costs after finding the January 2019 Code of Civil Procedure section 998 offer to compromise "was reasonable, valid and made in good faith" and manufacturer's "post-offer expert witness fees [were] reasonable."

Buyers appeal, challenging various aspects of the judgment as well as the trial court's denial of their new trial motion. Because we find merit in buyers' argument that the trial court erred in denying their new trial motion and, accordingly, reverse the judgment and remand for further proceedings, we do not address buyers' challenges to other aspects of the judgment.

## DISCUSSION[7]

A motion for a new trial based on inadequate damages should be granted where the uncontradicted evidence demonstrates the award is insufficient as a matter of law. (*Gersick v. Shilling* (1950) 97 Cal.App.2d 641, 645.) To resolve whether the jury's award in this case was insufficient as a matter of law, we must review de novo the statutory interpretation question whether a buyer's trade-in credit for the defective vehicle forms part of the "actual price paid or payable" calculus set forth in the restitution provision. (*California Forestry Assn. v. California Fish & Game Commission* (2007) 156 Cal.App.4th 1535, 1544 [we review de novo the proper interpretation of a statute as applied to undisputed facts].) We seek to determine the Legislature's intent and " 'first examine the statutory language, giving it a plain and commonsense meaning.' [Citation.] We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context. [Citation.] If the language is unambiguous, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the

---

[7]     Buyers' motion for judicial notice is granted.

8

language governs.' [Citation.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Kirzhner*, *supra*, 9 Cal.5th at p. 972.)

"The Act 'provides certain protections and remedies for consumers who purchase consumer goods such as motor vehicles covered by express warranties.' [Citation.] The Act requires that manufacturers of consumer goods covered by express warranties provide 'service and repair facilities' in the state 'to carry out the terms of those warranties.' [Citation.] 'In order to trigger the manufacturer's service and repair obligations, the buyer . . . "shall deliver nonconforming goods to the manufacturer's service and repair facility within this state. . . ." ' [Citation.] Motor vehicles are nonconforming for purposes of the Act if the nonconformity 'substantially impairs the use, value, or safety of the new motor vehicle to the buyer or lessee.' " (*Niedermeier*, *supra*, 56 Cal.App.5th at p. 1064, rev. granted.)

"Section 1793.2, subdivision (d)(2) sets forth the manufacturer's affirmative obligation to 'promptly' repurchase or replace a defective vehicle it is unable to repair, providing that if a manufacturer is 'unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B).' " (*Kirzhner*, *supra*, 9 Cal.5th at p. 971.) The buyer need not own or possess the defective vehicle in order to avail himself, herself, or themselves of these remedies. (*Martinez v. Kia Motors America, Inc.* (2011) 193 Cal.App.4th 187, 194 (*Martinez*).) The buyer is further "free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle." (§ 1793.2, subd. (d)(2).)

"In the case of replacement, the manufacturer shall replace the buyer's vehicle with a new motor vehicle substantially identical to the vehicle replaced. . . . The

9

manufacturer also shall pay for, or to, the buyer the amount of any sales or use tax, license fees, registration fees, and other official fees which the buyer is obligated to pay in connection with the replacement, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." (§ 1793.2, subd. (d)(2)(A).) When the manufacturer replaces the vehicle, "the buyer shall only be liable to pay the manufacturer an amount directly attributable to use by the buyer of the replaced vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity," as specified. (§ 1793.2, subd. (d)(2)(C).)

"In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." (§ 1793.2, subd. (d)(2)(B).) When restitution is made, "the amount to be paid by the manufacturer to the buyer may be reduced by the manufacturer by that amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity," as prescribed by statute. (§ 1793.2, subd. (d)(2)(C).)

If the fact finder finds the manufacturer's failure to comply with any obligation under the Act or an implied or express warranty was willful, the buyer may, except in specified instances, be awarded, in addition to his, her, or their damages, "a civil penalty which shall not exceed two times the amount of actual damages." (§ 1794, subd. (c).)

10

The Act is "strongly pro-consumer" and the "pro-consumer remedies [of the Act] are in addition to those available to a consumer pursuant to the Commercial Code . . . and the Unfair Practices Act [citation]. The Act 'is manifestly a remedial measure, intended for the protection of the consumer; it should be given a construction calculated to bring its benefits into action.' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990.)

Manufacturer argues the plain language of the restitution provision requires a credit for the trade-in value of a defective vehicle because a buyer's restitution does not include any amounts recouped through a trade-in or sale of the defective vehicle. Manufacturer relies, in part, on *Niedermeier*. In that case (currently pending before our Supreme Court), the Second District Court of Appeal, Division One, considered whether the trial court erred in denying the manufacturer's motion to reduce the buyer's jury award by $19,000 to account for the trade-in value the buyer had received for her defective vehicle when she purchased a new vehicle. (*Niedermeier*, *supra*, 56 Cal.App.5th at p. 1061, rev. granted.) The appellate court concluded the trial court erred and reduced the damages award because, "[a]s a matter of first impression, . . . the Act's restitution remedy, set at 'an amount equal to the actual price paid or payable' for the vehicle [citation], does not include amounts a plaintiff has already recovered by trading in the vehicle at issue." (*Ibid*.)

The *Niedermeier* court focused on the word "restitution" in the Act, stating it indicated "an intent to restore a plaintiff to the financial position in which she would have been had she not purchased the vehicle." (*Niedermeier*, *supra*, 56 Cal.App.5th at p. 1061, rev. granted.) The *Niedermeier* court reasoned that a literal reading of "the actual price paid or payable" in the restitution provision would permit a buyer "to recover far more" from a manufacturer than the "actual economic loss" to which the buyer would otherwise be entitled and would disregard "the Legislature's choice of the term 'restitution,' " leading "to an unjustified windfall." (*Id*. at p. 1071.) Relying on *Mitchell*,

11

the *Niedermeier* court said, just as "the Act cannot leave a plaintiff in a worse position than when he or she purchased the vehicle, it similarly would be inimical to the concept of restitution to leave a plaintiff in a better position, rather than merely restoring her to the status quo ante." (*Niedermeier*, at p. 1071, italics omitted, citing *Mitchell v. Blue Bird Body Co.* (2000) 80 Cal.App.4th 32, 36-37.) The *Niedermeier* court further reasoned that allowing a buyer to "trade in a defective vehicle in exchange for a reduction in the price of a new car while still receiving a full refund from the manufacturer" "would render the labeling and notification provisions [in the Act] largely meaningless, a consequence the Legislature could not have intended." (*Niedermeier*, at p. 1061.) We are unpersuaded and disagree with the *Niedermeier* court's analysis.

*Kirzhner* is instructive. In that case our Supreme Court considered whether registration renewal or nonoperation fees paid annually after the initial purchase or lease of a vehicle "are recoverable as collateral charges" under the restitution provision. (*Kirzhner*, *supra*, 9 Cal.5th at p. 972.) The court explained, "The Act makes clear that charges must be 'collateral' to the 'price paid or payable' to be recoverable." (*Ibid.*) Our Supreme Court thus analyzed the meaning of "price" in the restitution provision, defining it as " '[t]he cost at which something is obtained' or '[t]he consideration given for the purchase of a thing.' " (*Id.* at pp. 972-973.) The court further defined "collateral" to mean " '[a]dditional or auxiliary; supplementary; co-operating; accompanying as a secondary fact' or '[r]elated to, complementary, accompanying as a co-ordinate.' " (*Id.* at p. 973.)

In light of these definitions, our Supreme Court explained, "Initial registration fees are typically paid at the time of the sale or lease and are itemized as part of the total price paid for the vehicle in the sale or lease agreement. [Citations.] By contrast, subsequent registration renewal and nonoperation fees are not auxiliary to and do not supplement the price paid to own or lease the vehicle. Buyers do not pay these fees to the dealer in exchange for the vehicle. Instead, buyers renew their vehicles' registration on an annual

12

basis (or obtain a certificate of nonoperation) and pay the associated fees to the Department of Motor Vehicles . . . , but only so long as they continue to own or lease the vehicle at the time the fees become due." (*Kirzhner*, *supra*, 9 Cal.5th at p. 973.)

The buyer in *Kirzhner* in part argued "the phrase 'actual price paid or payable' indicates 'a legislative intent to ensure that the manufacturer pays the consumer what he actually paid in connection with the vehicle as of the time the repurchase occurs, rather than merely what he was obliged to pay at the time of contracting.' [The buyer] relie[d] on *Mitchell* . . . , in which the court interpreted the phrase ' "actual price paid or payable" ' to include finance charges paid after the date of purchase because these charges are amounts consumers become 'legally obligated to pay' at the time they buy or lease a new car. [Citation.] [The buyer] contend[ed] that registration renewal and nonoperation fees are akin to finance charges in that the buyer is legally obligated to pay them; the buyer can avoid the fees by simply selling the car; and the fees are paid over the course of several years rather than on the date of the sale or lease." (*Kirzhner*, *supra*, 9 Cal.5th at p. 974, citing *Mitchell v. Blue Bird Body Co.*, *supra*, 80 Cal.App.4th 32.)

Our Supreme Court disagreed, stating: "[The buyer's] interpretation reads the word 'price' out of the statute" because "the word 'price' means the cost at which an item is obtained. The word 'payable' modifies the word 'price' and operates to acknowledge that some buyers do not pay the full cost of the vehicle at the time of the initial purchase or lease. It does not, however, indicate that all charges and expenses that may later be incurred in connection with the ownership or use of the vehicle are recoverable, even if they are not a part of and do not accompany the price of the vehicle. The finance charges at issue in *Mitchell* are unlike registration renewal and nonoperation fees because a buyer obtains financing at the time of the purchase or lease in order to cover the total cost of the vehicle. Finance charges therefore supplement and are paid auxiliary to the price of the vehicle." (*Kirzhner*, *supra*, 9 Cal.5th at p. 974.) Our Supreme Court concluded, "[R]egistration renewal and nonoperation fees are not auxiliary to and do not supplement

13

the price paid because they are not paid *as part of the total cost of the vehicle and in exchange for the vehicle*." (*Id*. at p. 975, italics added.)

From *Kirzhner* we glean the phrase "actual price paid or payable" in the restitution provision means the cost to obtain the vehicle *at the time of purchase*, whether that cost is paid at the time of purchase or payable thereafter. The subsequent trade-in value (or sale) of a defective vehicle thus cannot form part of the "actual price paid or payable."

We disagree with the *Niedermeier* court's reasoning that the Legislature's use of the word "restitution" in the Act indicates an intent to import the common law meaning of restitution into the statute, overriding a literal reading of the restitution provision. (*Niedermeier*, *supra*, 56 Cal.App.5th at pp. 1061, 1071, rev. granted.) We have "strong reasons to doubt" that the restitution mentioned in the restitution provision "is the plain vanilla common law kind" rather than the narrower, more specialized concept *expressly defined* in the statute. (*Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, 1111.) Although the Legislature used the word "restitution" in section 1793.2, subdivision (d), it clearly defined *that term* in the restitution provision by stating it is "an amount equal to the actual price paid or payable by the buyer," a calculus that includes and excludes specified costs. We only assume that the common law meaning of a word was intended if the term has not otherwise been defined by statute. (*People v. Lopez* (2003) 31 Cal.4th 1051, 1060.)

The legislative history supports our conclusion that "restitution" in section 1793.2, subdivision (d) is not the plain vanilla common law kind. Prior to 1987, the Act provided that, "Should the manufacturer or its representative [of consumer goods] in this state be unable to service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." (Former § 1793.2, subd. (d).) In 1987, the Legislature created an

14

exception to the foregoing provision (which remains in § 1793.2, subd. (d)(1)) for a "new motor vehicle."[8]

The restitution provision was enacted and codified virtually unchanged from how it was introduced in Assembly Bill No. 2057. (Assem. Bill No. 2057 (1987-1988 Reg. Sess.) as introduced Mar. 6, 1987; see Stats. 1987, ch. 1280, § 2.) The Legislative Counsel's Digest in the introduced version of the bill, each subsequent amendment, and the chaptered version of the bill stated the "bill would revise the provisions relating to warranties on new motor vehicles to require the manufacturer or its representative to replace the vehicle or make restitution, *as specified*, if unable to conform the vehicle to the applicable express warranties after a reasonable number of attempts." (Assem. Bill No. 2057 (1987-1988 Reg. Sess.) as introduced Mar. 6, 1987; Assem. Amend. to Assem. Bill No. 2057 (1987-1988 Reg. Sess.) Apr. 28, 1987; Assem. Amend. to Assem. Bill No. 2057 (1987-1988 Reg. Sess.) May 13, 1987; Assem. Amend. to Assem. Bill No. 2057 (1987-1988 Reg. Sess.) June 11, 1987; Sen. Amend. to Assem. Bill No. 2057 (1987-1988 Reg. Sess.) Aug. 17, 1987; Sen. Amend. to Assem. Bill No. 2057 (1987-1988 Reg. Sess.) Aug. 25, 1987; Sen. Amend. to Assem. Bill No. 2057 (1987-1988 Reg. Sess.) Sept. 4, 1987; Assem. Bill No. 2057, approved by Governor, Sept. 28, 1987 (1987-1988 Reg. Sess.).)

The same "as specified" language was used in two committee reports and the summary digest to describe the proposed remedies in the bill. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2057 (1987-1988 Reg. Sess.) as amended Aug. 17, 1987, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 2057 (1987-1988 Reg. Sess.) as amended Sept. 4, 1987, p. 1; Legis. Counsel's Dig., Assem. Bill No. 2057 (1987-1988 Reg. Sess.) Stats. 1987, ch. 1280, Summary Dig., p. 457.) Several committee

---

[8]     As noted *post*, the meaning of this phrase is currently pending before our Supreme Court; the application of this phrase is not at issue in this appeal.

reports also stated the bill specified what would be included in the replacement and "refund" options and then identified and discussed the specific language as to the proposed restitution provision.  (Assem. Com. on Governmental Efficiency and Consumer Protection, Rep. on Assem. Bill No. 2057 (1987-1988 Reg. Sess.) as amended Apr. 28, 1987, p. 2; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2057 (1987-1988 Reg. Sess.) as amended Aug. 17, 1987, p. 4; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 2057 (1987-1988 Reg. Sess.) as amended Sept. 4, 1987, p. 3.)  And, finally, the State and Consumer Services Agency, in its enrolled bill report, explained:  "The present law also does not specify what costs are included when awarding restitution or replacement.  Restitution or replacement awards under current practice often do not make the buyer 'whole' (i.e., compensate him or her for expenses such as sales tax, license and registration fees, and towing or rental car costs).  [¶]  The calculation of the offset for the buyer's use prior to discovering the defect is a major source of disagreement between buyers and manufacturers.  A frequent complaint is that manufacturers seek reimbursement equal to the offset for use of commercial rental cars, which would be excessive and unfair to the buyer."  (State and Consumer Services Agency, Enrolled Bill Rep. on Assem. Bill No. 2057 (1987-1988 Reg. Sess.) Sept. 25, 1987, pp. 2-3.)

The legislative history indicates the Legislature wanted to specify *how* restitution awards *had* to be calculated as to defective vehicles.  As the *Jiagbogu* court appropriately noted:  "Section 1793.2, subdivision (d)(2)(C), and [subdivision] (d)(2)(A) and (B) to which it refers, comprehensively addresses replacement and restitution; specified predelivery offset; sales and use taxes; license, registration, or other fees; repair, towing, and rental costs; and other incidental damages.  None contains any language authorizing an offset in any situation other than the one specified.  This omission of other offsets from a set of provisions that thoroughly cover other relevant costs indicates

16

legislative intent to exclude such offsets." (*Jiagbogu v. Mercedes-Benz USA* (2004) 118 Cal.App.4th 1235, 1243-1244.)

*Mitchell* does not dictate a different result. In that case, "the issue was whether the manufacturer, in making restitution to the purchaser, had to reimburse the purchaser's finance charges. In answering the question in the affirmative, the Court of Appeal stated that the remedy was intended to restore the status quo, that is, make ' "complete relief, including restitution of benefits . . . and any consequential damages to which [the purchaser] is entitled . . . ." ' " (*Martinez*, *supra*, 193 Cal.App.4th at p. 199.) *Mitchell* has no application to the issue in this case. The *Mitchell* court used the general intent behind common law restitution to bring the Act's pro-consumer remedial " 'benefits into action.' " (*Murillo v. Fleetwood Enterprises, Inc.*, *supra*, 17 Cal.4th at p. 990.) Here, in contrast, manufacturer seeks to use the equitable common law doctrine of restitution to *defeat* the plain language of the restitution provision. (*Jiagbogu v. Mercedes-Benz USA*, *supra*, 118 Cal.App.4th at p. 1244 ["principles of equity [cannot] be used to avoid a statutory mandate"].)

Manufacturer also argues the Act makes clear the buyer is expected to return the vehicle to the manufacturer, relying on section 1793.23, subdivisions (c) through (e). This argument dovetails with manufacturer's further argument that disallowing the trade-in credit would frustrate the Act's "extensive provisions aimed at protecting consumers who might later acquire defective vehicles as used cars," as discussed in *Niedermeier*, *supra*, 56 Cal.App.5th at page 1061 (rev. granted).

We fail to see how the labeling and notification requirements with regard to reacquired vehicles assist in analyzing *the restitution provision* because the subdivisions relied upon by manufacturer focus on what the *manufacturer* or *dealer* must or cannot do *when it reacquires a defective vehicle* from the buyer; the subdivisions impose *no affirmative obligation on the buyer* to return the vehicle. As *Martinez*, *supra*, 193 Cal.App.4th at page 196 explained, while other states require a buyer to return the

17

defective vehicle to the manufacturer to receive a refund, reimbursement, or restitution under their respective automobile lemon laws, "[s]tatutorily, California has no such requirement." It further makes no sense that the labeling and notification requirements in the Act would be promoted if we read the *restitution provision* to reduce a buyer's recovery by the amount of the trade-in value of the defective vehicle. The defective vehicle has already been sold; the manufacturer simply gets the benefit of reducing its restitution obligation while obviating the responsibility it would otherwise have if it had reacquired the defective vehicle. Such a result does not further the pro-consumer and remedial intent behind the Act.

In *Figueroa*, *supra*, 84 Cal.App.5th at page 710, the buyer was forced to sell a defective truck and received a little more than $3,000 over the amount owed on the loan to purchase the truck. Manufacturer asserted it was entitled to "a credit for the $3,000 [the] plaintiff received on the loan." (*Ibid*.) The Second District Court of Appeal, Division Six disagreed. (*Ibid*.) The *Figueroa* court noted the buyer's "windfall" of which manufacturer complained was "the direct result of [manufacturer's] willful violation of the . . . Act." (*Id*. at p. 713.)

The *Figueroa* court was unmoved by manufacturer's argument "that if the owner of a defective vehicle is encouraged by a windfall to sell a defective vehicle on the open market, the purchaser of the vehicle will not receive the protections afforded by the . . . Act." (*Figueroa*, *supra*, 84 Cal.App.5th at p. 713.) The *Figueroa* court responded: "[Manufacturer's] concern for those who purchase defective vehicles on the open market without the protections afforded by the . . . Act is admirable. But when confronted with the duty to reacquire Figueroa's defective vehicle and provide such protections to a subsequent purchaser, it refused to do so." (*Ibid*.) In the *Figueroa* court's view, "it is [manufacturer], and not the vehicle's owner, who undercuts the [A]ct's labeling and notification requirements by refusing to repurchase the vehicle as required by the [A]ct.

The labeling and notification requirements only apply where the manufacturer replaces or repurchases the vehicle, something [manufacturer] has refused to do." (*Id.* at p. 714.)

The *Figueroa* court continued: "As this case and *Niedermeier* show, [manufacturer] operates in open defiance of the . . . Act. It considers promptly repurchasing, repairing, labeling as a lemon and selling the vehicle at a deep discount with a one-year warranty, a losing proposition. It would much rather force the owner of a defective vehicle to sell it on the open market, or trade it in without a label or warning, and use the cash back on trade value as an offset. *Niedermeier* encourages [manufacturer] to do just that. We decline to follow *Niedermeier*, although in some cases the owner of a vehicle receives a windfall. [Manufacturer] could have avoided this by complying with the law." (*Figueroa*, *supra*, 84 Cal.App.5th at p. 714.)

We agree with the *Figueroa* court's assessment that manufacturer is the one who undercuts the labeling and notification provisions of the Act when it declines to, refuses to, or does not reacquire the defective vehicle after the buyer complies with his, her, or their obligation under the Act to deliver the defective vehicle to manufacturer or its authorized representative. We further agree that manufacturer seeks to benefit by receiving a credit against its restitution obligation under the Act rather than reacquiring the vehicle. "Interpretations that would significantly vitiate a manufacturer's incentive to comply with the Act should be avoided." (*Jiagbogu v. Mercedes-Benz USA*, *supra*, 118 Cal.App.4th at p. 1244.) Crediting the manufacturer with the trade-in value of or sale proceeds received for the defective vehicle to reduce the buyer's remedy under the restitution provision would create a disincentive to reacquire or promptly replace or provide restitution for a defective vehicle. Such an interpretation would, in essence, reward manufacturer for declining or not offering to reacquire the vehicle. We decline to interpret the Act in that manner.

We believe our plain reading of the restitution provision is reasonable considering the duo of remedies available to the buyer of a defective vehicle. We see no distinction

19

(nor does manufacturer) between a buyer receiving a trade-in credit, as here, or sale proceeds, as in *Figueroa*. Yet, the "actual price paid or payable" language is located only in the restitution provision; it is absent from the replacement provision in section 1793.2, subdivision (d)(2)(A) (replacement provision). It is significant the Legislature vested *the buyer* with the right and power to elect between the duo of remedies. (§ 1793.2, subd. (d)(2).) It is further significant that a buyer need not own, possess, or return the defective vehicle in order to avail himself, herself, or themselves of these remedies. (*Martinez*, *supra*, 193 Cal.App.4th at pp. 194, 196.) Thus, a buyer may sell the defective vehicle and still seek restitution or a replacement vehicle.

Under manufacturer's and the *Niedermeier* court's interpretation, if a buyer elects a replacement vehicle instead of restitution, the buyer need not pay to the manufacturer the value he, she, or they received for the defective vehicle. That is because the replacement provision does not contain the "actual price paid or payable" language. If, on the other hand, a buyer elects the restitution remedy, the buyer must forego the value the buyer received for the defective vehicle as part of his, her, or their damages. Nothing in the Act or its legislative history indicates the Legislature would have hidden such an important financial difference between the two remedies in the words "actual amount paid or payable" in the restitution provision. " 'The Legislature "does not, one might say, hide elephants in mouseholes." ' " (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1171.)

It is not lost upon us that, in the absence of any other applicable statutes or doctrines that may provide manufacturer with the relief it requests (something we do not consider), a buyer may receive a financial windfall, as manufacturer puts it, when the buyer trades in or sells a defective vehicle and subsequently seeks restitution under the Act. That is, however, a policy consideration for the Legislature. We are tasked only with analyzing the legal issue presented on appeal, which is to interpret the "actual price paid or payable" language in the restitution provision.

20

Finally, manufacturer asserts buyers were not prejudiced by the jury's verdict because they could not have recovered more "as a matter of law" in the event of a retrial. (Boldface omitted.) Manufacturer argues that, if buyers "obtain the new trial they seek, they will recover less than the existing judgment, because they will confront the defense that any claim for restitution or penalties against a manufacturer is available only to the owner of a 'new motor vehicle,' not to used car purchasers such as themselves." (Citing *Rodriguez v. FAC US, LLC* (2022) 77 Cal.App.5th 209, review granted July 13, 2022, S274625.) *Rodriguez* is, however, pending before our Supreme Court and thus constitutes only persuasive authority and "has no binding or precedential effect." (Cal. Rules of Court, rule 8.1115(e)(1).) *Rodriguez* accordingly does not establish a lack of prejudice.

For the foregoing reasons, we conclude the jury inappropriately and prejudicially deducted the $29,500 trade-in value of the defective vehicle from the buyers' statutory restitution award, and thus the damages awarded were inadequate as a matter of law.

DISPOSITION

The judgment and the order denying the motion for a new trial are reversed and the cause remanded for further proceedings. Buyers shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)

/s/
Robie, Acting P. J.

We concur:

/s/
Hull, J.

/s/
Duarte, J.

22